# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

JAVIER CASTILLO,

    Plaintiff,

v.

CBCC SUPERINTENDENT, et al.,

    Defendants.

CASE NO. 3:17-CV-05701-RJB-JRC

ORDER ADOPTING REPORT AND RECOMMENDATION

THIS ORDER is issued following review of the Report and Recommendation of Magistrate Judge J. Richard Creatura (Dkt. 25), pleadings for an underlying motion, Defendants' Motion for Summary Judgment (Dkt. 17, 20, 22), and the remainder of the file herein. Plaintiff has filed a "Notice of Appeal and Memorandum of Support," Dkt. 26, which the Court has construed as Objections to the Report and Recommendation because of the procedural posture of the case, with Defendants' motion still pending.

The Report and Recommendation (R&R) recommends that Defendants' motion for summary judgment be granted and that the case be dismissed with prejudice as to all defendants. Dkt. 25. The R&R should be adopted, and the rationale is supplemented with the following analysis.

Plaintiff, an inmate at Washington State Penitentiary in Walla Walla, Washington, seeks damages under § 1983 for constitutional harms by several named defendants while incarcerated at a prior facility, Clallam Bay Corrections Center. In summary, Plaintiff alleges constitutional harm under the First and Fourteenth Amendments[1] from Defendants' request that Plaintiff rewrite grievances in English, rather than Spanish. The R&R recommends granting summary judgment of dismissal on qualified immunity grounds, as well as on the merits, because "plaintiff has not shown that a requirement to file grievances in English unlawfully restricted his ability to file grievances, and he has not otherwise shown that defendant had an unlawful motive for declining to process his grievances written in Spanish." Dkt. 25 at 1, 2.

Plaintiff's briefing repeatedly references DOC Policy 450.500 as giving rise to the § 1983 claim. *See, e.g.,* Dkt. 20 at 1, 10, 13; Dkt. 26 at 1, 7, 9. The policy, which is publicly available, is herein quoted because it does not appear elsewhere in the parties' briefing and the R&R. DOC Policy 450.500, entitled, "Language Services for Limited English Proficient (LEP) Offenders," is stated as follows:

> The Department [DOC] will provide interpretation (i.e., oral) and translation (i.e., written) services through Department and/or contract services at all Department facilities and field offices. The Department will also provide guidelines for interpretation and translation for Limited English Proficiency (LEP) offenders under Department jurisdiction.

DOC Policy 450.500 (revised 2013), available at http://www.doc.wa.gov/information/policies/ (last accessed 10/10/2018). The policy sets out a series of Directives, including:

> §I. Access to Language Services for Offenders . . . (C) Employees will review the Personal Characteristics-Languages section in the offender's electronic file to determine if the offender requires interpreter services. Employees may request interpretation/translation services when they become aware that a language barrier exists.

---

[1] The Complaint (Dkt. 6) does not specify whether claims are brought under the First Amendment or the Fourteenth Amendment, but Plaintiff's briefing elsewhere refers only to these two constitutional provisions.

§II. Interpretation/Translation . . . (B) Offenders may request . . . a translator for written communications, as appropriate as following[:]
    6. Grievances
        a. Grievances translated into English for Department review.
        b. Department responses translated into the offender's language.
        c. Notice of appeal rights, the appeal by the offender, and the decision regarding the appeal.

§IV. Denial of Interpretation/Translation Services. (A) The Superintendent/Work Release Program Administrator/Field Administrator can deny interpretation/translation services to offenders who demonstrate a pattern of abuse of the materials, services, and/or programs. Before an offender can be refused access to interpretation/translation services, the following conditions must be met:
1. An employee must document the abuse and submit it to the Superintendent/Work Release Program Administrator/Field Administrator.
2. The Superintendent/Work Release Program Administrator/Field Administrator must authorize, in writing, denial of interpretation/translation services. The denial must include parameters and specifications . . . to ensure the abuse is addressed, but adequate legal access is maintained. A copy of the denial will be scanned into the offender's electronic imaging file.
3. The Superintendent/Work Release Program Administrator/Field Administrator will notify the appropriate LEP Coordinator.
4. The offender will be notified, in writing, that his/her access to translation services has been denied.

*Id.* at §§I(C), II(B), IV(A).

    1. *Claim under the First Amendment.*

Although it is not entirely clear that Plaintiff has brought a claim under the First Amendment, the record should be so construed in deference to Plaintiff, who is *pro se*.

In the context of prisoner First Amendment claims, as the R&R observes, quoting *Richey v. Dahne*, 733 Fed.Appx. 881 at *2, 2018 WL 1940242 (9th Cir. 2018), "a prison official merely requesting that a prisoner rewrite a grievance is not a First Amendment violation." Dkt. 25 at 5. In *Richey*, the court summarized the basic rule for First Amendment claims in the prisoner context:

    Under the [*Turner v. Safley*, 482 U.S. 78, 93 (1987)] framework, a prison may constrain the expression of prisoners for a non-content-based legitimate penological reason, such as

      avoiding hostilities . . . [b]ut absent such a legitimate penological reason, content-based limitation of a prisoner's expression is unconstitutional.

*Id.*

Applied here, if Plaintiff brings a claim under the First Amendment, the claim does not withstand Defendants' affirmative defense of qualified immunity. The record reflects an exercise of discretion by Defendant Michael Holthe, who determined that Plaintiff was not a Language English Proficiency (LEP) inmate, reflected by the OMNI database (Dkt. 18-1 at 36); the first series of grievances written by Plaintiff, written in English in what Defendant Holthe believed to be Plaintiff's own handwriting (Dkt. 18 at 2); and an "investigation" of other documents (Dkt. 18 at 2, 3). On these facts, and under DOC Policy 450.500, the record reflects a legitimate penological reason for denying grievance translation.

Plaintiff's Objection argues that there are material facts as to whether Plaintiff is LEP, given Plaintiff's submission of a school transcript, which, Plaintiff represents, shows Plaintiff only made it through grade school in a non-English speaking school. Dkt. 26 at 10. There is no indication in the record that this evidence was in possession of DOC generally or Defendant Holthe specifically, and the DOC policy only requires consideration of the electronic file, but if it was, this would not be sufficient to overcome Defendants' shield of qualified immunity given the other materials in the file. Dkt. 18 at 2, 3; Dkt. 18-1 at 30-34.

    2. *Claim under the Fourteenth Amendment.*

Under the Fourteenth Amendment, a prison can violate the due process right to equal protection of its inmates by granting privileges to some and refusing them to other similarly situated inmates. *See Baumann v. Ariz. Dep't of Corrs.,* 754 F.2d 841, 845 (9th Cir.1985). However, such a violation can only arise when the privilege is a constitutionally protected liberty interest. Such a liberty interest can only arise where the policy confers a privilege that is not

subject to the discretion of prison officials. *Id.* at 844 (interpreting *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex,* 442 U.S. 1(1979)).

Applied here, much of DOC Policy 450.500 uses discretionary language and thus does not give rise to a liberty interest. For example, under §I(C), "[e]mployees <u>may</u> request interpretation/translation services when they become aware that a language barrier exists." The policy does mandate that employees "will review the Personal Characteristics-Languages section in the offender's electronic file[,]" but Defendant Holthe avows that he reviewed the electronic file. A screen shot of the electronic file, part of the record, does not indicate that Plaintiff was LEP. There is no evidence that Defendant Holthe departed from mandatory requirements of DOC Policy 450.500, if it does give rise to an actionable liberty interest.

Even if violating DOC Policy 450.500 under these facts could give rise to a constitutional claim, Plaintiff seeks damages only, not injunctive relief. (If Plaintiff did seek injunctive relief, such a claim could not be sustained, because Plaintiff is held at different facility than where the grievances issue arose.) The record does not establish an issue of material fact for an injury of constitutional magnitude. All but two of seven grievances were written, eventually, in English, and then processed administratively. Regarding the two remaining grievances, Nos. 17628722 (Dkt. 18-1 at 19) and 17629616 (Dkt. 18-1 at 23), Plaintiff received a response from Defendant Holthe requesting that they be rewritten in English, but nothing in the record indicates that Plaintiff suffered harm from this request, e.g., by the delay in DOC's response.

In summary, no matter whether viewed as a claim under the First Amendment or Fourteenth Amendment, Plaintiff has not met his burden to show a constitutional violation sufficient to overcome the affirmative defense of qualified immunity. Plaintiff has also not

shown facts supporting the request for damages under § 1983. Defendants' motion for summary judgment should be granted.

3.  *Supervisory liability and personal participation of Defendants Grubb and Haynes.*

Although not explicitly discussed in the R&R, Defendants' motion seeks dismissal for the failure to establish liability personal to Defendants Grubb and Haynes (not Defendant Holthe). Plaintiff has not established a constitutional deprivation personal to Defendants Grubb and Haynes, because a general theory of supervisory liability is not enough. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978); *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). Defendants' motion for summary judgment should also be granted on this basis.

* * *

THEREFORE,

(1) The Court HEREBY ADOPTS the Report and Recommendation (Dkt. 25).

(2) The Court HEREBY GRANTS Defendants' Motion for Summary Judgment (Dkt. 17).

(3) Plaintiff's action is DISMISSED as to all defendants.

It is so ordered.

**DATED** this 11th day of October, 2018.

ROBERT J. BRYAN
United States District Judge